LEMUEL P. BERRY, by Next Friend, Appellant, v.
ST. LOUIS TRANSIT COMPANY and UNITED
RAILWAYS COMPANY.

Division One, April 1, 1908.

1. **DEMURRER: Defendant: No Interest in Railroad.** Where
plaintiff sued two street railway companies for personal inju-
ries charged to be due to defendants' negligence in operating a
street car, and there is no evidence tending to show that one of
them had any interest in the railroad or its operation, a de-
murrer to the evidence as to it should be sustained.

2. **STREET CARS: Carriers of Freight.** A street car is designed
to carry passengers, not freight. And although passengers fre-
quently carry packages in their hands, that is a mere incident,
it is not the purpose for which the car is operated.

3. **NEGLIGENCE: Signal: Stopping Car: Inference.** Where
boys standing near a street railway track signaled for a car
to stop and it did stop in obedience to the signal, the inference
to be drawn in passing upon a demurrer to the evidence is that
the conductor and motorman saw the boys and saw their sig-
nal.

4. ————: ————: **Passengers: Carrying Letter-Press: Start-
ing Car.** Even though the conductor was unwilling for the
boys, who had signaled the car to stop and in obedience to whose
signal it had stopped, to load a letter-press on his car or on its
platform, still, if he recognized that their action indicated that
they intended to board his car as passengers, and to carry the
press as a hand parcel, he should have forbidden them to put it
on, and their attempt to put it on did not justify him in starting
the car without warning and without regard to consequences to
them. And the fact that the conductor·of the next car allowed
the boys to put the letter-press on his car and to be carried with
them, and when they transferred to another car its conductor
allowed the same act, shows that it was not such an unreasona-
ble burden as to justify the inference that their effort to put
it upon the car's platform did not give notice of their purpose
to take passage on the car.

5. ————: ————: ————: ————: ————: **Demurrer to Evi-
dence.** Plaintiff, a boy about twelve years old, and two other
boys, having a letter-press, signaled the car to stop as it turned
a corner, and in obedience to the signal it stopped, the conductor
being in the front end of the car. Immediately one of the boys

mounted the platform, and the plaintiff and the other boy, standing on the ground, lifted the press partly to the platform, and while they were pushing it and before it was on, the conductor rang the bell, the car started, and the press fell off and striking plaintiff injured him. *Held*, that the natural inference to be drawn from the act of the plaintiff was that he intended and was attempting to become a passenger on the car, that the conductor saw him, saw what he was doing, and knew his purpose, and under the circumstances the plaintiff was entitled to the care that a carrier owes a passenger, ana as the inference that might rairly be drawn, in the absence of any other testimony, is. that it was the starting of the car, without warning or protest, before the plaintiff had accomplished the act of putting the letter-press on the platform, that caused the accident, the court. erred in sustaining a demurrer to the evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

REVERSED AND REMANDED.

*R. P. & C. B. Williams* for appellant.

(1) The right of a person to carriage as a passenger on a street car rests on a contract, the essential ingredients of which are, that the person must signify his intention to take passage, either by words or conduct, and the car-men must assent, by words or conduct, to his becoming a passenger. Omara v. Railroad, 102 Mo. App. 202; Schepers v. Railroad, 126 Mo. 665; Farley v. Railroad, 108 Fed. 14; Railroad v. O'Keefe, 168 Ill. 115. (2) It is not necessary to the status of a passenger that a person be actually on the car, but he is entitled to the privilege of this status while attempting to get on, if the car has been stopped by those in charge for the purpose of receiving him or any one desiring to take passage. Omara v. Railroad, 102 Mo. App. 202; Murphy v. Railroad, 45 Mo. App. 342; Schepers v. Railroad, 126 Mo. 665; Cleveland v. New Jersey Steam Boat Co., 68 N. Y. 306; Smith v. Railroad, 36 Minn. 1. (3) It was the duty of the conductor in charge of the car, after the same

had stopped for the purpose of receiving passengers, to see and know that plaintiff was safely aboard, before starting the car; and it is no excuse that he stood in a part of the car where he was unable to see whether all persons had gotten aboard.   Nelson v. Railroad, 113 Mo. App. 702; Kohr v. Railroad, 117 Mo. App. 302; Randolph v. Railroad, 102 S. W. 1085; Miller v. Railroad, 102 S. W. 592; Meriweather v. Railroad, 45 Mo. App. 528; Becker v. Lincoln, 174 Mo. 251; Dudley v. Railroad, 73 Fed. 128; Highland Av. v. Burk, 92 Ala. 291; Railroad v. Calderwood, 89 Ala. 247; Anderson v. Railroad, 12 Ind. App. 194; Railroad v. Cook, 33 N. E. 958; Railroad v. Tabringer, 37 U. S. (L. Ed.), 284; Railroad v. Jones, 1 App. Cas. (D. C.) 220. (4) A boy of the age of plaintiff is not chargeable with the same degree of care as is required of a man.   "He is chargeable with the prudence of the ordinarily prudent boy of that age under like circumstances."   His act was not contributory negligence. Deschner v. Railroad, 200 Mo. 310; Holmes v. Railroad, 190 Mo. 98; Walker v. Railroad, 193 Mo. 482; Anderson v. Railroad, 161 Mo. 424.

*Boyle & Priest* and *T. M. Pierce* for respondents.

There was a complete variance between the negligence pleaded and proved.   The gist of appellant's action was that "while plaintiff was attempting to board said car, with said press, the said press was thrown off said car and thrown against plaintiff." Devoy v. Railroad, 192 Mo. 211.   There was no proof that the car was started with any extraordinary or unusual jerk.   But, on the contrary, it was shown that the car must have moved away slowly, because the boy, Moran, who was with appellant, had already gotten on the car when it started, and thereafter, although his hands were filled with packages, he got off the car and joined appellant.   The press was caused to fall from the car because appellant was holding to

it. Appellant did not prove that he was attempting to board a street car, but he merely showed that with an intention to become a passenger he was actually attempting to place a heavy letter-press upon the platform. Price v. State, 35 Ala. 367; Hart v. State, 38 Tex. 382. It may be true that appellant, after he had gotten the letter-press upon the platform of the car, intended to attempt to become a passenger. This, however, he did not plead, and, under the rules of practice which prevail in this State, a party having elected to stand upon one claim of negligence cannot recover upon any other act of negligence, even if it be such that, if properly pleaded, it would have afforded a cause of action. Hesselbach v. St. Louis, 179 Mo. 524; Todd v. Railroad, 105 S. W. 671. The negligence of starting a car with an unusual or extraordinary jerk is altogether different from the premature putting of a car in motion before sufficient time is allowed to a wayfarer to get aboard. Saxton v. Railroad, 98 Mo. App. 503. And so it has been held that the starting of a car with a sudden jerk is a specific and different kind of negligence from suddenly increasing the speed of a car after it has started. Smith v. Railroad, 103 S. W. 593.

VALLIANT, P. J.—Plaintiff, a boy twelve years old, in attempting to board a street car, alleged in the petition to have been then owned and operated by the defendant corporations, was severely injured and sues to recover damages for his injuries, alleging that the accident was caused by the negligence of defendants' servants in operating the car. The case stated in the petition is that the plaintiff, with two other boys, was sent by their employer to carry a letter-press to a person in the western part of the city; that to accomplish their mission it was necessary for them to take passage on one of defendants' street cars; that

accordingly they hailed a car at the corner of Fourth and Olive streets, the car was stopped in answer to their signal, one of the boys, who had other packages to carry, immediately boarded the car, while the plaintiff and the other boy attempted to take passage and place the letter-press on the car, and while attempting to put the letter-press on the rear platform and before they could do so and before plaintiff could get on the platform the conductor of the car negligently gave the signal to the motorman and he suddenly and quickly started the car and the press was thrown off the platform and struck the plaintiff on the left leg between the hip and the knee causing severe injuries, which are specified.

The transit company answered by a general denial and a plea of contributory negligence; the United Railways, by a general denial.

At the close of the plaintiff's evidence the court gave an instruction for each of the defendants to the effect that the plaintiff was not entitled to recover; from the judgment of nonsuit that followed, the plaintiff appealed.

The testimony on the part of the plaintiff was to the following effect:

Plaintiff's own account of the accident was: "I had orders to take the press out and there were three boys—but there was three of us to go out, and one of them had packages, and they sent out a boy that worked in the store to help us on the car and we came to the car with what we had, and one boy got on, and I was raising the press on the street car, and the conductor, before I could push it on the street car, he rang the bell and the car started, and it knocked the press off on my leg, and the car wouldn't stop but kept going, and we waited for another car, and it stopped and we put the press on and took it out on Olive street car to Jefferson avenue and then we got off the Jeffer-

son avenue car and delivered the press." He testified that they had signaled the car to stop and it had stopped for them, one boy had gotten on, and plaintiff and the other boy took hold of the press and were pushing it on the platform, "it was just resting on the platform and I had part of it in my hands and was holding the rest of it." There was no other passenger in the car at the time; the conductor was in the front part of the car.

On cross-examination he said that he was not on the car but "I was fixing the press on so I could get on. Q. Let me understand you; you put the press on and were still standing on the ground when the car started? A. I hadn't got the press on entirely; I was fixing it so I could get on. . . . Q. How near on did you put it? A. We had it about half on, I guess. Q. Were you pushing it? A. I was pushing it on." The car did not stop after it started and the other boy who had at first gotten on the car jumped off and came back to plaintiff and they two hailed the next car, put the press on it and finished the errand on which they had been sent; the third boy went back to the store. It was an iron letter-press and quite heavy. The court asked the plaintiff how long it took to lift the press up and shove it on the car, he answered, "Why, I don't think it took us a minute, hardly. As soon as the car stopped one boy was getting on, and we pushed the press right up just as soon as it stopped." He said it was about half on when the car started and he was pushing it. It was about eleven o'clock in the forenoon. Frank Moran was one of the three boys, it was he who got on the platform. His testimony was substantially the same as that of the plaintiff on the points stated; he testified that as soon as he got on the platform he went around the iron bars that were there, to help pull the press on the platform, but before he got around

the conductor started the car and the press fell off and hit the plaintiff on the leg.

The rest of the plaintiff's testimony as set out in the original abstract related to the character of the plaintiff's injuries, of which it is sufficient for the present to say it tended to show that, although the plaintiff was able to accomplish his errand on that day, yet soon after the injuries developed seriously and in consequence the plaintiff has endured considerable suffering and impairment of his health and strength.

The sole question is, was the plaintiff entitled to have his case submitted to the jury?

I.    The first point urged by respondent is that there was no evidence tending to prove that the transit company was operating the car, and, according to the original abstract, that point is well taken, but the appellant has by leave of court filed an additional abstract in which the needed evidence on that point is supplied.    In the additional abstract it is shown by the testimony of the then president of the transit company that that company was operating the street railroad at that time.    There was no evidence, however, tending to show that the United Railways Company had any interest in the railroad or in its operation. The instruction in the nature of a demurrer to the evidence as to the United Railways Company was therefore correct.

II.    Was there evidence tending to show negligence on the part of the conductor and motorman, or either, that caused the plaintiff's injuries?

In judging the conduct of the defendant's servants in this respect it is necessary to ascertain what the relation between the defendant and the plaintiff was at the instant of the accident, because that relation determines the duty, and the performance or neg-

lect of performance of that duty determines the question of negligence on the part of defendant.

The defendant's theory is that the evidence does not tend to show that plaintiff was attempting to become a passenger on the car, but only that he was "attempting to put a heavy letter-press upon the platform," he remaining on the ground, and, judging from the remarks of the learned trial judge in ruling on the instructions, that was his opinion also; he said: "Gentlemen there is no negligence whatever of a wilful character shown to have been committed by the defendants in this case. Whatever negligence, if any, there is, is by way of mere inadvertence, an omission to perform a duty. There was no duty on the part of the railroad company to either load or see that this press was safely loaded on the rear platform of the car."

It is true the boys were attempting to put the letter-press on the platform, and if that was all that could fairly be inferred from their action the defendant's theory would be correct. But was that all that their action indicated? A street car is designed to carry passengers, it is not designed to carry freight, and although by common experience we know that passengers in street cars do frequently carry packages in their hands, yet that is a mere incident, it is not the purpose for which the car is operated. When this car turned from Olive street into Fourth the motorman and conductor saw these three boys signaling to stop; unless they had supposed their signal meant that they purposed to become passengers they would not have obeyed it, and, when they saw two of the boys carrying the letter-press to the car and moving as if to put it on, if it had occurred to them that the boys were only aiming to ship the press as freight on the car, they would not have stopped, because they knew that they were not engaged in the transportation of freight,

not running a freight car.    We say the motorman and conductor saw the boys and their signal and their actions; we say so because that is the inference to be drawn when passing on a demurrer to the evidence and because also they stopped the car in obedience to the signal.    At that time there was no passenger on the car and it was eleven o'clock in the forenoon; there was nothing to attract the conductor's attention from the boys, he was on watch and gave the signal bell to the motorman by which the car was started.    If we could, with reason, imagine the conductor thinking that the action of the boys indicated only a purpose on their part to load the press on the car to be transported as freight, then we could not understand why he did not forbid them doing so.  And even if he thought the letter-press was a burden beyond the reasonable hand parcels that passengers are accustomed to carry and was unwilling to have it loaded on his car, still, if he recognized that their actions indicated that they intended to board the car as passengers, and to carry the letter-press as a hand parcel, he should have forbidden them putting it on; their attempt to do so did not justify him in starting the car without warning and without regard to consequences.    The fact, however, that the next car that came along stopped for them and the conductor allowed them to put the press on the car and be carried with them, and that when transferred at Jefferson avenue to another car the conductor of that car also allowed the same act, shows that it was not such an unreasonable burden as to justify the inference that the effort to put it on the platform did not give notice of a purpose to take passage on the car.

The natural inference to be drawn from the act of the plaintiff in this instance was that he intended and was attempting to become a passenger on the car, that the conductor saw him, saw what he was doing

and knew his purpose, and under those circumstances the plaintiff was entitled to the care that a carrier owes a passenger. It was the starting of the car before the plaintiff had accomplished the act of putting the letter-press on the platform that caused the accident, at least, in the absence of any other testimony, that is an inference that might fairly be drawn, and it fairly raises a question of fact whether or not it was negligence in the conductor to give the signal to start at that instant.

It is argued in support of the ruling of the trial court that the evidence shows that the plaintiff had hold of the letter-press and that when the car started he, holding on, pulled it off. The plaintiff testified that he was pushing the letter-press to get it further on. The boy who had gotten on the car and was going around the iron bars on the platform to help pull the press on, said: "He (the plaintiff) had it holding with one hand and by swinging it it hit him in the leg." On cross-examination he said: "It was half on, and Lemuel [the plaintiff] had hold of this end loading it on; he was pushing it on and I was supposed to go around and pull it over." It is not probable that either boy could be entirely accurate as to the position of the plaintiff's fingers on the letterpress. But assuming that the plaintiff's fingers were gripped around the handle when the car started, it is not a necessary conclusion that he pulled it off. Even in pushing, it would be natural to grip the handle and if, while it was gripped, the car started when he was not expecting it to do so and before he had warning to loosen his hold and while the letter-press was only half on in an unbalanced condition, the accident was the result of the starting of the car, at least that is an inference that the triers of the fact might reasonably have drawn. If there was anything in the evidence

indicating contributory negligence on the part of the plaintiff, it was not so clear as to justify the court in so ruling as a matter of law.

It is impossible to give an exact formula prescribing the acts necessary to constitute the relation of carrier and passenger; only general principles can be stated, and each case must be judged by its own facts. We hold that the evidence in this case tended to show that the plaintiff intended to board this car to be carried as a passenger, that he was attempting to carry that intention into effect, that the defendant's servants in charge of the car saw, or if they had exercised the care incumbent on them would have seen, what the plaintiff was doing and would have understood what his purpose was, and by suffering him without objection or warning to do what he was doing consented to receiving him as a passenger under those circumstances, and the relation of carrier and passenger was thereby created.    And we hold that the starting of the car at the instant and under the circumstances was negligence for which the defendant would be liable.    We mean of course that such would be the legal result if the facts were as the evidence tends to prove they were.

Defendant contends that there is a variance between the negligence as pleaded and the case made by the proof, but we do not so understand it.    The petition alleges the negligence substantially as the evidence tends to prove.

The court erred in giving the instruction in the nature of a demurrer to the evidence as it concerns the St. Louis Transit Company.    The judgment is reversed and the cause remanded to be retried in accordance with the views herein expressed.

All concur.